On the trial the plaintiff produced and gave in evidence a deed from one Robert Johnson to his testator, for the negro Agg or Aggy, dated 9 December, 1813. This deed was in the usual form of a bill of sale for slaves, expressed to be made in consideration of the sum of $150 paid by the purchaser to the seller, but with the following proviso: "Provided, nevertheless, if the said Robert Johnson should well (653) and truly pay unto the said Britton the above sum herein mentioned, before his death, then the above obligation to be void, only the increase, if any, to remain the property of Britton Johnson." The plaintiff then proved the other slaves to be the issue of Aggy, and showed a demand before the action brought, made of the defendant, and a refusal by him to surrender the slaves. He then called as a witness one William Nelson, who deposed that the negro Aggy went into the possession of Britton Johnson upon the execution of the deed, and remained there for about eighteen months or two years, when she had a child named Jacob, and shortly afterwards ran away, leaving the child with Britton Johnson; that she went to the house of Robert Johnson, and soon after Britton applied to the witness to go with him to see Robert on the matter; that he went, and Britton asked Robert why he did not send the girl home? to which he replied that the girl complained of Britton's wife; that she was a good girl whom he had raised and had never struck a blow; and he disliked to force her back. Britton said he had one little child now to raise by hand; if Robert kept the woman and left him all the children to raise which she might have, it would be very hard on him, as he was to have no interest for the $150, but the use of Aggy instead; and desired him to give him a note for the money. Robert replied that he had given Jesse Johnson (who was a stepson of his) *Page 514 
some negroes, and he wished to do as much for Britton (who was his nephew — the said Robert being childless), and therefore he had given him the issue which Aggy might have; that he would not give Britton a note; but in order that he might not complain of having to raise the little negroes, if Britton would consent to let Aggy remain with him, he would himself raise and take care of all the children she might have, for Britton, as long as he lived, without any trouble or expense to Britton, so that Britton would have them at his death. Britton said he was afraid to leave them so long, lest the right to them under the deed should not be good. To this Robert replied that old Mr. Moyt, who drew the deed, understood it as well as a lawyer, and proposed that (654) Britton, Jesse, and the witness should go to Mr. Burges (a gentleman of the bar), submit the deed to him, state what they desired to do, and obtain his opinion; if he thought the present instrument sufficient, the negroes to remain; otherwise another instrument to be drawn, in order to assure the negroes to Britton. To this Britton assented, and Mr. Burges was accordingly consulted and gave his opinion that the deed was good and that Britton might safely leave the negroes with Robert to bring up the young children, as had been proposed. This opinion was made known to Robert, and all the negroes sued for remained with him till his death in June, 1836, when the defendant took possession of them as his administrator. The boy Jacob, the first child of Aggy, was kept by Britton Johnson till his death, in December, 1837. The sum of $150 was the full value of such a negro as Aggy, at the time the deed was made.
The defendant called as a witness one Mrs. Clark, who stated that Britton Johnson said to her, some few years after the date of the deed, that Robert had paid up the money, and he had no claim to the negro Aggy. He also called one Jenkins, who said that Britton, five or six years after Aggy had run away, told him he had no claim to Aggy, as the money was paid by Robert Johnson; but that he had the writings, which he would never give up, but would stand a suit first. The defendant also called one Benthall, who stated that in a conversation between Robert and Britton, about twenty years ago, the former demanded of the latter the papers, who said he had them not with him, but that he would give them up another time. The defendant then showed that about the year 1827 Robert Johnson became noncompos; and a guardian was appointed for him, who hired out the negroes from year to year during his life — he continuing non compos; to his death; and then called a witness named Futrill, who stated that after Robert's becoming non compos, he went with Britton to Robert's house, when they found him calm, as he sometimes was; and after some words had passed between them, Robert demanded of him the negroes, upon which Robert *Page 515 
became furious, and abused and cursed Britton; and he shortly after left the house. This was all the material evidence given, except to character.
The defendant's counsel insisted that the deed under which (655) the plaintiff claimed was upon its face usurious and void; that if not so upon its face it was so upon the fact stated by William Nelson, that Britton Johnson was to have the use of negro Aggy in lieu of interest, and was also to have the increase of Aggy; that upon the true construction of the instrument only the increase which should be born to Aggy before the repayment of the sum mentioned in the deed were to belong to Britton; that the evidence showed that the money was repaid shortly after the time mentioned by Nelson, and before the birth of either of the children of Aggy sued for; and that consequently the plaintiff could not recover. And finally, if these points were against him, that the bailment existing between Robert and Britton had been ended, 1st, by the fact of the guardian of Robert hiring out the slaves, which the counsel contended put an end to the bailment in law, and made the possession adverse; 2ndly, by the demand of the papers and notice to Britton that he claimed and held for himself, and not for Britton; and 3rdly, by the demand stated by Futrill; and consequently the plaintiff was barred by the statute of limitations.
The plaintiff's counsel contended that there was no evidence of any usury — for though an agreement to let Britton keep the increase, in addition to the use of the negro Aggy, would be evidence of usury, if allowed, on account of a loan or forbearance, yet here the increase were intended as an advancement from a childless uncle to a nephew — were a gift; and therefore it was no evidence of usury; and that there was no evidence that the use of Aggy was worth more than the interest of the money — but if the jury believed there was any intention to take more than a lawful rate of interest, and there were a color to conceal it, then he admitted the transaction was usurious, and the plaintiff could not recover. Secondly, he insisted that the true construction of the deed was that all the increase of Aggy, during the life of Robert Johnson, should be the property of Britton; but that if the construction of the defendant's counsel were the true one, he denied that the money ever had been paid, and insisted to the jury that the evidence to show it was not to be relied on. Thirdly, he admitted that if the possession had become adverse by a demand and refusal, or by any act inconsistent with the title of Britton, then the plaintiff was barred; but he (656) insisted to the jury that the evidence to show it was not to be trusted. He denied that in law the hiring by the guardian put an end to the bailment, and of itself made the possession adverse; and insisted that if what Futrill stated actually occurred it could not bar, because Robert was at *Page 516 
the time a maniac, and had neither the legal nor actual control of the negroes, and because what passed did not amount to a demand and refusal. And, therefore, he contended that the possession was held as the bailee of Britton, of all the slaves; that the plaintiff had a right to recover Aggy, if the money mentioned in the deed had not been repaid; but he admitted that if it had been repaid the plaintiff was not entitled to recover Aggy, but that whether that was paid or not, he had a right to recover the other slaves, her issue.
His Honor instructed the jury that if the deed was infected with usury, it was void, and the plaintiff could not recover; that a corrupt agreement or understanding for more than the legal rate of interest would vitiate the deed, whatever the form in which it might be put; that if the increase of the negro Aggy were reserved to Britton Johnson in lieu of interest, besides the use of the negro, it would be evidence of a corrupt agreement for usury; but if the increase were really intended to be given by Robert as an advancement to his nephew Britton, and had no connection with the loan, then it would not be usurious. Whether allowing the use of the negro instead of interest would be usurious would depend on the value of the use, whether it exceeded the interest on the money, of which no evidence had been given, but of which the jury would judge; and if they were satisfied there was in either way a bargain or agreement for usurious interest, then they should find for the defendant. Whether the true construction of the deed was that all the issue of Aggy, during the life of Robert Johnson, or only such as might be born before the repayment of the money mentioned in the deed, would vest in Britton, his Honor said he would reserve for further consideration; but, in the meantime, that the jury would consider the case as if all the issue were within the operation of the deed; and he instructed the jury that if they were satisfied that the said money (657) had been paid they should find their verdict for the defendant as to the negro Aggy, however they might find in regard to the other slaves.
As to the possession, his Honor instructed the jury that, supposing Britton Johnson had title under his deed, whether the plaintiff could recover or not would depend on whether Robert held possession for himself or for Britton. If for himself, commencing three years before the bringing of the action, then the plaintiff was barred; if for Britton, during the whole time, then the plaintiff was not barred; that such a possession as was mentioned by William Nelson, held under the agreement, and for the purposes stated by him, would not be adverse to Britton, but would be a possession for him, and would not bar, however long continued; but if the character of that possession was changed by any act inconsistent with the purposes for which he held, or with the title *Page 517 
of Britton, or by a refusal to deliver upon a demand made, or by notice to Britton that he no longer held for him, but for himself, then the statute would immediately apply and in three years would bar the right. The fact of hiring by the guardian, his Honor instructed the jury, was not an act so inconsistent with the relation of the parties as of itself merely to determine the bailment, and make the possession adverse; and as to the demand stated by Futrill, he instructed them that although Robert Johnson had been found non compos, and had a guardian appointed, yet if, in fact, he knew what he was about, and in answer to the demand, intended to assert a title or possession in himself, or deny the right of Britton, that would change the character of the possession, and put the statute in operation. And upon the whole, his Honor directed the jury to inquire whether the holding which was first for Britton had ceased to be for him and became a holding against him, and to regulate their decision accordingly.
The jury found for the plaintiff for all the negroes; and a motion being made for a new trial for misdirection, and especially in the construction of the deed, his Honor said he considered it unnecessary to inquire as to the propriety of that opinion, because the jury, by finding for the plaintiff for the negro Aggy, under the instruction given them, had declared that the money had not been paid, and so the instruction become immaterial; and the new trial being refused and judgment given for the plaintiff, the defendant appealed. (658)
There is no legal ground on which, as we conceive, the verdict and judgment in this case can be disturbed. The action is between the personal representatives of a mortgagee and mortgagor for a female slave and her issue, born subsequent to the execution of the deed, which was in 1813. The sum lent was $150, and the clause of redemption is thus expressed, "Provided, nevertheless, if the said Robert Johnson should pay unto the said Britton the above sum before his death, then the above obligation to be void; only the increase, if any, to remain the property of the said Britton Johnson." The mortgagor died in 1836, and the other party in 1837, and the present action was brought in 1838; and the jury have found that the debt remains unpaid.
Upon the case thus stated, the right of the plaintiff to recover the slave originally conveyed depends upon the plainest principles, and the right to the issue necessarily follows that to the parent. The objections to the recovery taken by the defendant have been considered by us, and such as the jury have not said are unfounded in fact, we deem to be untenable in law or misapplied in this case or in this forum. *Page 518 
The instruction upon the point of usury seems to us to be unexceptionable. Supposing it to have been intended that the mortgagee should have the use of the slave pledged, yet if that use did not, in the opinion of the jury, exceed in value the legal rate of interest on the debt, it is plain there was no usury. So, if the property in the issue, in addition to the use of the mother, would exceed in value the interest, yet that would not constitute usury, if the issue was not to vest in the mortgagee by reason or on account of the loan and forbearance, but was to become his in a different character, namely, as the donee of such increase. This is true, whether the intended donation be effectual in law or not; for, although it may be void for want of some requisite formality (659) as a gift, yet its actual existence, even in an informal shape, repels the imputation of the corrupt design to reserve a greater rate of interest than is allowed by law; and without such motive usury cannot be committed. The evidence was therefore properly heard and considered upon this point, because it was a question of quo animo the agreement was thus framed.
There seems, however, to have been, upon the trial, a vague impression that the evidence of this agreement as to the issue was material to the plaintiff's right to recover, as being substantive evidence of a distinct title of the nephew to the issue. Were it material to the rights involved in the present suit in a court of law, it would be our duty to examine that question. The inquiry, whether the evidence on this subject establishes in law a gift from the uncle to the nephew, is very different from the inquiry whether the same was competent for the purpose to which it was directly adduced. The distinction is very apparent. In the one case, parol evidence is received to establish that an instrument is not infected with a secret vice that would invalidate it, or that a corrupt purpose, which might be inferred from the instrument without explanation, did not in fact and truth exist. The object of the proof is, therefore, to support the instrument in its present form as a valid security for the debt mentioned in it. But in the other view, the parol evidence is offered to make out a gift. By itself and independent of the deed, it is clearly inadequate. The question is, can it be received in aid of the deed to control and give a character to it by turning that into a deed of gift which, notwithstanding the unusual terms in which the right to redeem is reserved, must, by itself, be deemed to be of that species of conditional conveyances called mortgages? This is a grave question to the rights of these parties as they may ultimately be settled. It will arise when the present defendant applies to redeem. It does not arise now; or, rather, the rights here involved cannot be affected by it. Our inquiry is confined to the point, in whom is the legal title; and upon that it is evident the plaintiff must succeed. For as the *Page 519 
instrument is found to be untainted by usury, it is a valid subsisting mortgage for the mother, and of course carries the increase. Beyond that, therefore, search for a title to the plaintiff (660) is supererogatory.
In reference to the points on the statute of limitations, it is to be observed that the Court is also relieved from considering their correctness by the state to which the controversy is reduced in the views already taken of it. As the mortgagor had his whole life to pay by the money, and had paid no part of it at his death, the mortgage became forfeited only on that event. We think that a mortgagor, is not, under any circumstances, as between him and the mortgagor, obliged to take possession before a forfeiture, and thereby subject himself unnecessarily to an account. Whatever had occurred before the day of payment, our opinion is that the mortgagee might waive it, and that upon the forfeiture of the mortgage by the nonpayment of the money at the death of the debtor, a right to demand the mortgaged property thereby and then arose to the mortgagee. Consequently this action, which was brought within two years thereafter, is not barred.
PER CURIAM. Judgment affirmed.
Cited: Hinson v. Smith, 118 N.C. 507.
(661)